**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GABRIEL CORREA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 17-4481** |
| | : | |
| **C/O S. BROWN, et al.** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                **March 8, 2019**

Plaintiff, an inmate currently incarcerated at the State Correctional Institution ("SCI")-Greene, brought this *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, claiming that during his incarceration at SCI-Graterford, defendant Correctional Officer Sandra Brown propositioned him to have sex on multiple occasions in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also claims that defendant Correctional Officers Jerome Bloom, Carl Johnson, Smith, Roberto Castillo, Pamela Walters, Maintenance Inmate Leader Sam Doe and Lieutenants Troy McGreer and Howlus violated Plaintiff's Eighth Amendment rights by failing to protect him from Brown's alleged sexual overtures as well as from threats by other inmates. Plaintiff has also asserted a claim against defendant James Barnacle ("Barnacle"), the Director of Prison Rape Elimination Act ("PREA") investigations for the Pennsylvania Department of Corrections, based on the outcome of an investigation conducted by Barnacle into Plaintiff's allegations of a "sex-ring" at SCI-Graterford.

In response to defendants' motion to dismiss for failure to state a claim, the Plaintiff filed a motion for leave to file an amended complaint [ECF 15]. The Court

granted the motion [ECF 22] and Plaintiff filed an amended complaint [ECF 25].[1]

Presently before the Court, is the motion of the defendants to dismiss the amended

complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of

Civil procedure [ECF 27].[2] For the reasons that follow, the motion is granted.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

claims alleged in the complaint. Under Fed.R.Civ.P. 12(b)(6), the court must accept as

true the factual allegations in the complaint, and construe any inferences to be drawn

from the allegations in Plaintiff's favor. See *Kanter v. Barella*, 489 F.3d 170, 177 (3d

Cir.2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir.2005)). "The

assumption of truth does not apply, however, to legal conclusions couched as factual

allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

---

[1] In his original complaint, Plaintiff named many additional defendants, including Lieutenant Ashley, Sergeant Nice, Counselor Vasquez, CCPM Terra, Security Captain Terra, Lieutenant Howlus, Major Gina Clark, Deputy Sciera and Hearing Examiner Yoder. Perhaps because the Plaintiff did not include these defendants in the section of the amended complaint styled "DEFENDANTs," the Clerk marked these additional defendants as terminated. However, in the section of the amended complaint styled "LEGAL CLAIMS," Plaintiff does assert claims against these defendants. In addition, Plaintiff has filed a statement with the Court in which he states that he has not dropped any defendants from this action [Doc. 29]. In view of the above documents and Plaintiff's pro se status, the Court will allow plaintiff to proceed against all the defendants named throughout his amended complaint.

[2] In his motion to dismiss the amended complaint, defense counsel asserts that the Pennsylvania Department of Corrections has been unable to locate a Correctional Officer Smith or a Lieutenant Howlus at SCI-Graterford. In addition, defense counsel does not represent a private individual such as Maintenance Man Sam Doe. As a result, defense counsel has not entered an appearance for these three defendants and they are not part of his motion to dismiss. Therefore, the amended complaint will be dismissed *sua sponte* as to these three defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, since defendants Lieutenant Ashley, Sergeant Nice, Counselor Vasquez, CCPM Terra, Security Captain Terra, Major Gina Clark, Deputy Sciera and Hearing Examiner Yoder are not included in defendants' 12(b)(6) motion to dismiss, the claims against them will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The standard for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as the standard under Federal Rule of Civil Procedure 12(b)(6). *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ethypharm S.A. France v. Abbott Labs*, 707 F.3d 223, 231 n.14 (3d Cir 2013). When dismissing a claim under § 1915(e)(2)(B)(ii) for failure to state a claim, however, plaintiffs "should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Here, the Court finds that any amendment would be futile.

1949–50, 173 L.Ed.2d 868 (2009). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must contain enough "facts to state a claim to relief that is plausible on its face" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted); accord *Iqbal*, 129 S.Ct. at 1953. The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*, 129 S.Ct. at 1949 (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

The amended complaint alleges that all of the Defendants are employees with the Pennsylvania Department of Corrections "("DOC"). (Am. Comp, at ¶¶ 4-21.) In addition, the following four pages contain allegations made only by Plaintiff: Between the end of November 2006 and January 28, 2017, Plaintiff was involved in a "boyfriend-girlfriend" relationship with Correctional Officer Brown. (*Id.* at ¶ 26.) On January 21, 2017, Brown offered to perform oral sex on Plaintiff for his birthday, but Plaintiff declined the offer. (*Id.*, at ¶ 27. ) On February 1, 2017, Brown asked the Plaintiff to have sex with her, but Plaintiff again declined. (*Id.*, at ¶ 30.) Later that same day, Brown allegedly had sex with ten other inmates while Correctional Officer Walters kept a look-out. (*Id.*)

On February 2, 2017, Brown yelled to Plaintiff, "You think I'm not gonna get some? You're gonna give me some!" You worked out for me!" (*Id.* at ¶ 31.) Brown then allegedly had sex with ten other inmates as Correctional Officer Johnson kept a look-

out. (*Id.*) Brown then performed oral sex on Correctional Officer Johnson, Sergeant Nice and about five other guards in the guard station. (*Id.*) Sergeant Nice was in charge of the C-Block at the time and would often disappear with Correctional Officer Brown into the counselor's office whenever Sergeant Nice was on duty. (*Id.* at ¶ 69.)

On February 5, 2017, Brown announced to the C-Block unit that Plaintiff "was still her man and that she would not be having sex with anyone when the Plaintiff was out of his cell." (*Id.* at ¶ 32.) Plaintiff alleges that he became "persona non grata" on his unit because he would not have sex with Brown. (*Id.*)

On February 8, 2017, Brown complained to an inmate named "Rock" that Plaintiff refused to have sex with her. (*Id.* at ¶ 33.) In the presence of Correctional Officer Smith, Rock threatened to stab Plaintiff for not having sex with Brown. (*Id.* at ¶¶ 33, 60.) Because of the threat, Plaintiff then fashioned a knife to protect himself and slashed his wrists in order to be taken to the psychiatric observation cell in a different section of the prison. (*Id.*)

On February 10, 2017, Plaintiff was released from psychiatric observation back to C-Block. (*Id.*, at ¶ 35.) Upon his arrival at the unit, Plaintiff went to take a shower during which three inmates called Plaintiff "crazy," "rat" and "pussy." (*Id.*) Plaintiff also requested a pass to speak with the PREA coordinator, Kristina Owens. (*Id.*) He made the request to Lieutenant Ashley who "scowled at" Plaintiff and told him to wait outside Owens' office. (*Id.* at ¶¶ 35, 68.) Because he felt intimidated by Lt. Ashley, Plaintiff did not report Brown's sexual advances to Owens. (*Id.*)

Counselor Delilah Vasquez requested that Plaintiff come to her office to talk. (*Id.*, at ¶ 37.) Vasquez flirted with Plaintiff and stood up with her "butt" inches from Plaintiff's

face. (*Id.*) Plaintiff then "reached out and touched [Vasquez's butt]." (*Id.*) Plaintiff then told Vasquez about the sexual harassment he was experiencing and about 93 rapes he claimed had occurred at SCI-Graterford. (*Id.*)

On that same day, Brown had the maintenance man (Sam Doe) standing by the Plaintiff's cell door with the side panel open so that Plaintiff could go to the basement to have sex with Brown. (*Id.* at ¶ 38.) Brown sent Correctional Officer Johnson to Plaintiff's cell to ask Plaintiff if he wanted to have sex with her. Plaintiff refused. (*Id.*) Plaintiff also alleges that same day CCPM Terra (PREA Coordinator) threatened the Plaintiff when he walked up to Plaintiff and said, "What's going on with you, you want to get locked up?" (*Id.* at ¶¶ 40, 71.)

Plaintiff filed a grievance with Wendy Shaylor, the Grievance Coordinator at SCI-Graterford, informing her that there was a sex ring operating at SCI-Graterford. (*Id.*, at ¶ 39.) Later that day, Plaintiff requested that he be taken to the psychiatric observation unit because he was feeling suicidal. (*Id.* at ¶ 40.) Plaintiff was taken to the psychiatric observation unit. (*Id.*)

On February 14, 2017, Plaintiff was released from the psychiatric observation unit and placed in the Restrictive Housing Unit. (*Id.* at ¶ 42.) Plaintiff was informed that Counselor Vasquez had issued a charge of misconduct to Plaintiff for his actions in her office five days earlier. (*Id.*) After the misconduct was dismissed, Counselor Vasquez issued Plaintiff a second misconduct that was also dismissed. (*Id.*) After the second misconduct was dismissed, Counselor Vasquez then issued Plaintiff a third misconduct consisting of five Class 1 charges. (*Id.*) Plaintiff alleges that this misconduct was in reprisal for "bringing his claims to light." (*Id.*) Later that night , as a result of receiving the

misconducts and not feeling safe, Plaintiff slit his wrists and was taken back to the psychiatric observation unit. (*Id.*) Plaintiff claims Counselor Vasquez manipulated the facts and her story in attempt to discredit the PREA claim Plaintiff was planning to file. (*Id.* at ¶ 70.)

Following his release from the psychiatric observation unit, Plaintiff was taken to the L-Unit to which Correctional Officer Brown had also been reassigned. (*Id.* at ¶ 44.) Defendant Lieutenant McGreer and Sergeant Nice were also reassigned to the L-Unit. (*Id.* at ¶ 45.) According to Plaintiff, both McGreer and Nice had assisted Correctional Officer Brown with raping inmates by either turning a blind-eye or by opening doors into rooms that had no cameras. (*Id.* at ¶¶ 45,67.)

During the first week of March, 2017, Plaintiff was contacted by the Major of Unit Managers Gina Clark. Plaintiff alleges that Major Clark informed Plaintiff that if he would withdraw his grievance about sexual harassment, there was a good possibility that he would be allowed to remain at SCI Graterford so that he could finish his juvenile lifer program. (*Id.* at ¶¶ 47, 74.)

After a hearing for his third misconduct from Counselor Vasquez, Hearing Examiner Yodis found Plaintiff guilty of the misconduct. (*Id.* at ¶¶ 46, 76.) Plaintiff alleges that he lied during the hearing in order to protect himself from retaliation. (*Id.*) As a result of the finding of guilty, Plaintiff was transferred to SCI-Greene on May 4, 2017. (*Id.* at ¶ 50.)

On July 5, 2017, Plaintiff filed an official PREA complaint with the Office of Special Internal Investigations ("OSII"). (*Id.* at ¶ 51.) Deputy Sciera is the Deputy Superintendant at SCI-Graterford who signed off on the paperwork for Plaintiff's PREA

investigation. (*Id.* at ¶ 75.)  On August 3, 2017, CCPM Terra, Deputy Sciera and Lieutenant Howlus were notified that Plaintiff could identify at least 40 of the alleged rape victims as well as many of the corrections officers involved. (Id. at ¶ 53.) However, Plaintiff was never contacted by any of these defendants.   (*Id.* at ¶¶  53, 72, 73.) Plaintiff's PREA complaint was investigated by Deputy Sciera who determined on August 11, 2017 that the allegations were "unsubstantiated." (*Id.*, at ¶ 54.) On August 15, 2017, OSII Director Barnacle notified Plaintiff that his investigation was also complete and that his office found the claims to be "unsubstantiated." (*Id.*, at ¶ 55.)

Plaintiff has sued all the defendants in both their official and individual capacities. (*Id.* at ¶ 22.)

Moving defendants first argue that all claims against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment precludes private federal litigation against states, state agencies, and state officials in their official capacities. The DOC is an executive department of the Commonwealth of Pennsylvania. *See* 71 P.S. §§ 61-62, 732-102. This immunity is subject to three basic exceptions: "(1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, a state official may be sued in his or her official capacity for prospective injunctive relief." *Hollihan v. Pennsylvania Department of Corrections*, 159 F.Supp..3d 502, 510 (M.D. Pa. 2016) (citing *Ex parte Young,* 209 U.S. 123 (1908)); see also *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997). As it pertains to the first exception, it is well-settled that by enacting § 1983 Congress has not abrogated Eleventh Amendment

immunity. *Id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)).

Second, Pennsylvania has unequivocally withheld consent to suit under § 1983. *Id.*

"Section 8521 of Title 42 of the Pennsylvania Code clearly states, 'Nothing contained in

this subchapter shall be construed to waive the immunity of the Commonwealth from

suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the

United States.'" *Id.* (citing 42 Pa. C.S. § 8521(b)); see also *Lombardo v. Pennsylvania,*

*Dept. of Public Welfare*, 540 F.3d 190, 196 (3d Cir. 2008); see also *Laskaris v.*

*Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Finally, Plaintiff raises official-capacity

claims against the defendants under § 1983 as employees of the DOC. Such official-

capacity claims are only exempt from Eleventh Amendment immunity when the official

is sued for prospective injunctive relief. *Hindes v. F.D.I.C.*, 137 F.3d 148, 165 (3d Cir.

1998) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

To the extent Plaintiff requests injunctive relief against any Defendant , this relief

is not "prospective." Plaintiff is no longer incarcerated at SCI-Graterford. It is well-

established that a prisoner lacks standing to seek injunctive relief if he is no longer

subject to the alleged conditions he seeks to challenge. *See Abdul-Akbar v. Watson*, 4

F.3d 195, 206-07 (3d Cir.1993); *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir.1981).

Because Plaintiff cannot satisfy any of the three exceptions to the rule that state officials

are immune from suit in federal court for actions taken in their official capacities, the

Plaintiff's § 1983 official-capacity claims against the Defendants are barred by sovereign

immunity. These claims will be dismissed pursuant to Rule 12(b)(1) of the Federal Rules

of Civil Procedure because the Court lacks subject matter jurisdiction over them. *See*

*Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996)

Of course, a state official sued in his or her personal capacity is amenable to suit under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff first claims that Correctional Officer Brown violated Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment when she allegedly asked him for sex on a number of occasions.

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a claim under § 1983, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Kneipp*, 95 F.3d at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)); see *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

While this suit was pending before the Court, the Court of Appeals for the Third Circuit addressed for the first time "whether sexual abuse of inmates by prison officials offends the Eighth Amendment." *Ricks v. Shover*, 891 F. 3d 468 (3d Cir. 2018). In *Ricks*, an inmate brought suit under the Eighth Amendment claiming that a male correctional officer rubbed his erect penis against Ricks' buttocks through both men's clothing.

In concluding that sexual abuse by prison officials can constitute cruel and unusual punishment, the Third Circuit stated that even "a single incident, if sufficiently

serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." 891 F. 3d at 477. Instead of adopting a per se rule regarding the number of incidents needed to be sufficiently serious or severe, the Third Circuit adopted an analysis of a subjective and objective component, i.e. "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." 891 F. 3d at 475.

However, the Third Circuit indicated that in order for the objective component to be satisfied, there must be contact or touching of the inmate by the prison official. ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual contact.") 891 F 3d at 471. "[W]e decline to craft a mechanical factor test for when sexual *contact* is objectively, sufficiently serious. The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged *contact*. But it goes without saying that objectively serious sexual *contact* would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." 891 F. 3d 478 (emphasis added).

Indeed, other Courts of Appeals have similarly held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction in violation of the Eighth Amendment. See, e.g., *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir.2000) (Eighth Amendment is violated when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). (Mere

verbal sexual harassment without accompanying physical contact is not enough to state a claim for Eighth Amendment violation); *Murray v. United States Bureau of Prisons*, 106 F.3d 401 (6th Cir.1997) (offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); *Morales v. Mackalm*, 278 F.3d 126, 129 (2d Cir.2002) (demand for sex in front of other female staff does not rise to the level of an Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n. 11 (10th Cir.1998) (severe verbal sexual harassment and intimidation are not sufficient to state a claim under the Eighth Amendment); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir.2006) (solicitation of prisoner's masturbation, even under the threat of retaliation, does not violate the Eighth Amendment).

Indeed, the Third Circuit and other Courts constantly refer to "contact" as being necessary for the conduct to be actionable under the "excessive and unprovoked pain" line of cases. To have liability arise without actual contact would invite a morass of cases based on verbal abuse alone. Clearly, that cannot be the Court's intent.

Therefore, while the behavior alleged by Plaintiff on the part of Correctional Officer Brown in sexually propositioning Plaintiff on multiple occasions may be inappropriate and unprofessional, without allegations of unwanted direct physical contact and, or, physical injury, it does not rise to the level of an Eighth Amendment violation under the Third Circuit's decision in *Ricks*.

Plaintiff has also asserted a failure-to-protect claim against Correctional Officers Bloom, Johnson, Smith, Castillo, Walters, maintenance man Sam Doe, and Lieutenants McGreer and Ashley, Sergeant Nice, Counselor Vasquez, and CCPM Terra, based on

the fact that they were allegedly allowing inmates to be raped by Correctional Officer Brown.

In the first instance, Plaintiff lacks standing to bring his own claim for failure to protect based on Brown's alleged sexual contacts with other inmates.

Second, a failure-to-protect claim requires the Plaintiff to show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Fuentes v. Wagner*, 206 F.3d 335, 367 (3d Cir. 2000) citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, even assuming arguendo that the first two prongs are satisfied, the Plaintiff cannot state a claim because he does not allege that he was personally harmed. Plaintiff never alleges that he was raped or even touched by Correctional Officer Brown, nor by any inmate or corrections officer while incarcerated at SCI-Graterford. Therefore, Plaintiff's failure to protect claim has no merit.

Plaintiff also claims defendants Lieutenant Ashley, Counselor Vasquez, CCPM Terra, Security Captain Terra, Lieutenant Howlus, Major Clark, Deputy Sciera, Hearing Examiner Yodis and Director Barnacle in various ways denied the Plaintiff's First Amendment right to "freely address grievances." Plaintiff himself admits, however, that he filed a PREA grievance with the Grievance Coordinator at SCI-Graterford which was dismissed as "unsubstantiated" by Deputy Sciera. (Am. Compl. ¶¶ 24, 54.) Plaintiff also admits that he filed a substantial PREA complaint with the OSII. (*Id.* at. ¶¶ 24, 51.) Therefore, by Plaintiff's admission, this claim lacks merit.

Plaintiff sues Barnacle because he investigated Plaintiff's claims of a sex ring operating at SCI-Graterford and found those claims to be unsubstantiated. It is clear that failure to adequately investigate or respond to an inmate's grievance does not rise to the level of a constitutional violation. Therefore, the amended complaint fails to state a claim against Barnacle. An inmate cannot sustain a claim against prison supervisors based solely upon a deficient after-the-fact investigation into the alleged unconstitutional conduct. *Positano v. Dalbalso*, No. 16-CV-1570, 2016 WL 6089865, at **5–6 (M.D. Pa. Aug. 17, 2016), report and recommendation adopted, 2016 WL 6082307 (M.D. Pa. Oct. 17, 2016). Here, Plaintiff does not allege any wrongdoing by Barnacle. Instead, Plaintiff sues Barnacle because he was unsatisfied with the results of Barnacle's  investigation. Mere allegations that an official did not act favorably after-the-fact based upon an inmate's complaint does not state a cause of action.  Accordingly, the claim against Barnacle will be dismissed.

While defendants' motion to dismiss the amended complaint was pending, Plaintiff filed two motions for an emergency injunction, claiming that certain officials at SCI-Greene issued Plaintiff several charges of misconduct since March 19, 2018 and placed him in solitary confinement, actions which Plaintiff claims constitute retaliation from his filing the amended complaint in this action on March 5, 2018. Plaintiff requests that the Court order him to be transferred to another prison, pending the Court's disposition of his amended complaint.

None of the officials that Plaintiff claims are issuing him misconducts at SCI-Greene are named defendants in this case because this case only names as defendants officials at SCI-Graterford. A Section 1983 plaintiff must demonstrate that a

defendant was personally involved in the alleged violation(s) of his or her federal rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). If Plaintiff wishes to proceed against anyone at SCI-Greene, he must file a separate suit naming such officials as defendants. Accordingly, Plaintiff's motions for emergency injunctions will be denied.